## Sipel's Estate

*J. Andrew Frantz*, for petitioner; *Charles W. Eaby*, contra.

APPEL, P. J., June 14, 1934.—This is a petition of Annie Sipel, widow of decedent, asking the court to compel the administrator c. t. a. to appoint appraisers to appraise and set aside out of the personal estate the $500 exemption in accordance with the Fiduciaries Act of 1917, P. L. 447, sec. 12(a). This the administrator, though formally requested, refused to do, claiming that, though petitioner was admittedly the widow of decedent, she had forfeited her right thereto. Whatever irregularities there may be in this procedure, they were waived by both parties, and the court is asked to pass on the widow's right to her exemption on the merits. Testimony was taken, and from it the court finds the following facts:

Edward A. Sipel and his wife, an elderly couple, were married April 19, 1919,

and lived together until November 20, 1933, when they separated. They had no children. In February 1933, the widow discovered that her husband was maintaining an adulterous relationship with other women. When she charged such misconduct, it was admitted by the decedent. Then followed brutal treatment by decedent, in which he inflicted on his wife serious physical injuries. He beat her, blackened her eyes, knocked out her teeth, and otherwise abused her in repeated assaults upon her person. All this appears in the testimony of the widow and other competent witnesses. Indeed, it was not denied. This course of conduct resulted in Mrs. Sipel bringing two criminal complaints against her husband before an alderman. The charges were adultery and felonious assault and battery. At the hearing before the alderman, there was an agreement (hereinafter considered) by which the wife was induced not to press the criminal charges. This agreement was afterwards formulated and executed by husband and wife in the office of counsel for the husband, when Mrs. Sipel was not represented by counsel. This was followed by decedent leaving his home and deserting his wife. The testimony shows that he was often requested by his wife to abandon his adulterous relationships, behave himself, and return to his home. It appears that he never did so, though they met occasionally socially. The marital relationship was never resumed. She lived in the home and maintained herself, and he lived elsewhere until the day of his death. He died January 20, 1934, in a hospital, of the result of an automobile accident. On the day he died, decedent made his will, leaving all his estate to his father. The will was duly probated, and the father became administrator c. t. a. The widow has not as yet elected to take under or against the will. The estate, it is stated, consists entirely of personalty and amounts approximately to $1,000. We have no difficulty in finding that the misconduct of the husband was of such character that the wife could successfully have maintained an action for divorce. This is amply sustained by witnesses quite apart from the widow, whose competency is challenged. This is not seriously disputed by counsel for decedent. He frankly states that his entire defense is based on the legal effect of the above-mentioned agreement, which we will now consider. On this he says his case must stand or fall. The agreement is as follows:

"This agreement made this 20th day of November, 1933, between Edward A. Seiple and Annie M. Seiple, witnesseth:

"1. That the said Edward A. Seiple does hereby convey to Annie M. Seiple, her heirs and assigns, all the household goods now contained in a certain property owned by the parties hereto in East Drumore Township, Lancaster County, Pa.

"2. That the said Edward A. Seiple does hereby pay to the said Annie M. Seiple the sum of $100, which amount the said Edward A. Seiple owes the said Annie M. Seiple, and of which sum the said Annie M. Seiple hereby acknowledges receipt.

"3. That the said Edward A. Seiple hereby agrees to pay the said Annie M. Seiple for support as long as she remains his wife the sum of $10 per week, the first payment to be made Saturday, November 25, 1933, and a like sum on each and every Saturday thereafter.

"4. That the said Annie M. Seiple does hereby release, acquit, and forever discharge the said Edward A. Seiple, his heirs and assigns, of and from any and all obligations of any kind, civil, criminal or otherwise, up to and including the date of this release.

"5. That the said Annie M. Seiple hereby authorizes and empowers John F. Burkhart to dismiss all cases now pending against the said Edward A. Seiple, and the said Annie M. Seiple hereby agrees not to bring any suit of any kind

against the said Edward A. Seiple for anything that has or may have occurred prior to the date of this release.

"Witness our hands and seals this 20th day of November, 1933.

"Witnesses present:

"C. W. Eby                          E. A. SIPEL   (Seal)

"John M. Burkhart            ANNIE SIPEL   (Seal)"

As stated, the above agreement was executed in the office of decedent's attorney, and Mrs. Sipel was without legal counsel to advise her of her legal rights. It is contended that by reason of the agreement the widow forfeited her right to the exemption and is legally barred from claiming it. With this contention we do not agree. It is clearly evident the agreement was suggested by decedent and made in order to arrest further prosecution of the criminal charges made by his wife. Such prosecution would undoubtedly have resulted seriously to the decedent. It nowhere appears, either in the testimony or in the agreement itself, that there was any other purpose in the minds of all parties than that the criminal complaints made before the alderman should be withdrawn. There was no suggestion that Mrs. Sipel would surrender or was surrendering any rights she might have in her husband's estate in case of his death. After stating the consideration (referred to later), section 4 of the agreement states that Mrs. Sipel releases and discharges decedent "of and from any and all obligations of any kind, civil, criminal or otherwise, *up to and including the date of this release*" (italics ours). Section 5 authorizes the alderman "to dismiss all cases now pending against the said Edward A. Seiple", and Mrs. Sipel "agrees not to bring any suit of any kind against the said Edward A. Seiple for anything that has or may have occurred *prior to the date of this release*" (italics ours). The agreement nowhere contains or refers to a surrender of any claim she may have against the decedent's estate in case he predeceases her. Neither does it contain any stipulation that a separation which was occurring was or should be by agreement which would bar her right to the exemption now claimed by her. That there was never at any time such an agreement is amply sustained by the testimony. On the contrary, it shows that she repeatedly and consistently, both before the agreement was executed and afterwards, beseeched decedent to mend his conduct, leave his evil associations, and return to his home where she would receive him as her husband. This she hoped for up to the time of his unexpected death. He, however, never returned. We have no difficulty in finding, and we do so find, that the separation was entirely due to his misconduct; and that this misconduct was such as would have entitled her to a divorce. This case does not come, therefore, within the class of cases where there is an amicable separation with the result that the exemption may not be claimed by the widow: Crawford's Estate, 81 Pa. Superior Ct. 222; Stauffer's Estate, 89 Pa. Superior Ct. 531, and many others that might be cited.

In conclusion, we may refer to the consideration set forth in the above-mentioned agreement. This seems substantial but in reality is not. The household goods referred to were mostly the property of Mrs. Sipel. The hundred dollars was her own, held by her husband for safekeeping. The real estate was the home in which they lived, was inherited by her from her father, and was placed in their joint names at her husband's request. The stipulation to pay his wife $10 per week represents only a continuing obligation, enforceable in the court of quarter sessions, to maintain and support his wife.

The rule to show cause, etc., is made absolute, and the administrator is directed to appoint two appraisers to appraise and set aside to the widow, Annie Sipel, the $500 exemption allowed by law. Costs to be paid by the estate.

From George Ross Eshleman, Lancaster, Pa.